**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY BORRELLO, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>ELIZABETH BOARD OF EDUCATION, et al.,<br><br>Defendants. | Civil Action No. 14-3687 (JLL) (JAD)<br><br>**OPINION** |

**LINARES,** District Judge.

This matter comes before the Court by way of Defendants' motions to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  The Court has considered the parties' submissions in support of and in opposition to the instant motions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Court **GRANTS** the Defendants' motions.

## I.     BACKGROUND

Plaintiffs Alfonso Borrello, Jr. and Mary Borrello (collectively "Plaintiffs") are husband and wife.  (Compl. ¶ 89, ECF No. 1-2).  From 1986 to July 1, 2012, Mary worked as a secretary for Defendant the Elizabeth Board of Education (the "Board"), where Defendant Pablo Munoz works as the superintendent.  (*Id.* at ¶¶ 2, 7, 31).  Over the years, Mary received numerous annual personnel evaluations, signed by her direct supervisor, awarding her the highest possible ratings in the categories of skill, punctuality, cooperation, personality, initiative, and composite

---

[1] On June 13, 2014, Defendants Pablo Munoz and the Elizabeth Board of Education filed a motion to dismiss Plaintiffs' Complaint.  (Notice of Mot. to Dismiss, ECF No. 2).  Defendant Karen Murray filed her own motion to dismiss Plaintiff's Complaint on June 25, 2014.  (Notice of Mot. to Dismiss, ECF No. 5).

rating. (*Id.* at ¶ 7).  At the time of the events underlying this action, Mary had tenure and worked in the main office of School No. 19, also known as Woodrow Wilson School. (*Id.* at ¶¶ 7, 10).

      In February 2008, Plaintiffs' daughter, a special needs student in the Elizabeth School District, was on a bus that went missing for hours while transporting her home. (*Id.* at ¶ 14). After this incident, Plaintiffs attended the next scheduled Board meeting, where two assistant superintendents asked them why they were there. (*Id.*).  Plaintiffs responded that they wanted to know what had happened with the bus, and were told that there would be an investigation. (*Id.*). No one ever followed up with Plaintiffs. (*Id.*).  At or about the time of the meeting, Alfonso was seeking election as a Board member. (*Id.* at ¶ 15).  Mary had previously supported and contributed to political fundraisers related to the Board earlier in her career, upon succumbing to pressure from others, but she eventually stopped doing so. (*Id.* at ¶ 8).

      On or about March 7, 2008, Mary was told to report to the Board's office, the Mitchell Building, where she was notified that she was being placed on administrative leave with pay. (*Id.* at ¶ 10).  She was permitted to return to School No. 19 with a Board investigator to retrieve her belongings. (*Id.* at ¶¶ 10-11).  Shortly thereafter, Mary received a letter, dated March 20, 2008, informing her that the Board had approved a resolution during its March 19, 2008 meeting placing her on administrative leave, effective March 7, 2008, "pending conclusion of an ongoing investigation." (*Id.* at ¶ 11).  Mary was instructed to stay home and not to report to School No. 19 until further notice. (*Id.* at ¶ 13).  The Board never disclosed the nature of the investigation to Plaintiffs and never "officially" charged Mary with any form of misconduct. (*Id.* at ¶¶ 11, 17-18).  Because the Board did not "officially" charge Mary, the Elizabeth Education Association was unable to assign her an attorney. (*Id.* at ¶ 17).

On or about July 19, 2010, Defendant Karen Murray, the Board's Director of Human Resources, advised Mary in writing that the Board had approved a resolution during its June 24, 2010 meeting withholding her increment and salary adjustment for the 2010-2011 school year. (*Id.* at ¶ 19). Mary next heard from Murray on September 2, 2010, at which time she received a letter ordering her to report to the Mitchell Building on September 7, 2010. (*Id.* at ¶ 21).

For approximately the next ten months, Mary reported to the Mitchell Building each workday from 8:00 a.m. to 4:00 p.m., with a lunch break between noon and 1:00 p.m. (*Id.* at ¶¶ 21, 23). Throughout that time, the Board assigned Mary to a room therein known as the "rubber room," located down the hall from Murray's office, along with other Board employees that were awaiting disciplinary action. (*Id.* at ¶¶ 22-23). The rubber room lacked ventilation, was dirty, and contained scattered materials. (*Id.* at ¶ 23). Per Murray's instructions, those assigned to the rubber room were prohibited from leaving the room, eating in the room without a physician's note, or talking on their phones. (*Id.*). The ban on phone conversations extended to bathroom breaks. (*Id.*). This treatment caused Mary to feel totally inadequate and to have poor self-worth. (*Id.* at ¶ 24). Upon the disbandment of the rubber room, Murray ordered Mary to stay home until further notice. (*Id.* at ¶ 25).

On July 5, 2011, Mary received a letter from Murray advising her that the Board had approved a resolution withholding her increment and salary adjustment for the 2011-2012 school year. (*Id.* at ¶ 26). Eventually, Mary retired from the Board, effective July 1, 2012. (*Id.* at ¶ 31). Mary had intended to continue working for the Board in her secretarial capacity until her sixty-fifth birthday and beyond if her health allowed her to do so. (*Id.* at ¶ 36). Upon her retirement, Defendants never paid Mary for her unused vacation time or her accumulated sick days. (*Id.*). Nor did Defendants pay Mary the $1,000 stipend that she claims her perfect attendance record

entitled her to receive.  (*Id.*).  Throughout the time of these events and thereafter, Alfonso alleges that Defendants' actions deprived him of Mary's consortium.  (*Id.* at ¶ 90).

Based on these events, which Plaintiffs maintain were "politically motivated," Plaintiffs filed the operative Complaint before the New Jersey Superior Court, Union County on April 14, 2014.  (*Id.* at ¶¶ 1-93).  On June 9, 2014, Defendants removed Plaintiffs' action to this Court. (Notice of Removal, ECF No. 1).  The Court has federal question jurisdiction over Plaintiffs' 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  Defendants now move to dismiss.

## II.    LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness.  *Id.*; *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

4

## III.    DISCUSSION

Nine counts are set forth in Plaintiff's Complaint.  (Compl. ¶¶ 40-93).  The Court

clarifies its understanding of these counts.  Count I alleges two distinct claims—one for hostile

work environment and another for wrongful constructive discharge.  (*Id.* at ¶¶ 40-46).  Counts II

through V allege retaliation claims, each citing to different sources of law.  (*Id.* at ¶¶ 47-77).

Count VI alleges a breach of contract claim premised on Defendants' purported violation of

Mary's terms of employment.  (*Id.* at ¶¶ 78-80).  Count VII alleges an intentional infliction of

emotional distress claim.  (*Id.* at ¶¶ 81-87).  The Complaint does not include a Count VIII.  It

instead jumps to Count IX, which alleges a *per quod* claim premised on Alfonso's purported loss

of consortium.  (*Id.* at ¶¶ 88-90).  Lastly, Count X alleges a punitive damages claim.  (*Id.* at ¶¶

91-93).  Defendants now move to dismiss all of these claims.

### A.    Whether the Hostile Work Environment Claim May Proceed (Count I)

Count I of Plaintiffs' Complaint alleges that Defendants' actions subjected Mary to a

hostile work environment.  (Compl. ¶ 41).  Under New Jersey law, as Defendants point out, a

hostile work environment claim is "only cognizable" under the New Jersey Law Against

Discrimination (the "NJLAD"), N.J.S.A. 10:5-1 to -42, and the Conscientious Employee

Protection Act (the "CEPA"), N.J.S.A. 34:19-1 to -14.  *Fazio v. Temp. Excellence, Inc.*, No. L-

9353-07, 2012 WL 300634, at *7 (App. Div. Feb. 2, 2012) (citations omitted).  Here, Plaintiffs'

Complaint does not invoke these statutes and it cannot do so successfully given the facts alleged.

To state a hostile work environment claim under the NJLAD, a plaintiff must allege,

among other things, that she is a member of a "protected class."  *Victor v. New Jersey*, 203 N.J.

383, 409 (2010) (citation omitted).  While the NJLAD's list of protected classes is extensive,

absent from that list is one's political affiliation.  N.J.S.A. 10:5-12(a).  Because the crux of

Mary's hostile work environment claim is that Defendants discriminated against her on the basis of her political affiliation with Alfonso, (Compl. ¶¶ 8, 33, 48, 52-54, 72), her claim cannot proceed under the NJLAD. *See, e.g., Siss v. Cnty. of Passaic*, 75 F. Supp. 2d 325, 335 (D.N.J. 1999) (noting that discrimination claims premised on political affiliation are not cognizable under the NJLAD).

Likewise, Mary's hostile work environment claim cannot proceed under the CEPA, even assuming that the claim accrued on July 1, 2012 (the date Mary's retirement from the Board became effective). The limitations period under the CEPA is only one year. N.J.S.A. 34:19-5; *Villalobos v. Fava*, 342 N.J. Super. 38, 45 (App. Div. 2001). Mary's hostile work environment claim therefore would be time barred if brought under the CEPA because the Complaint herein was not filed until April 14, 2014, which is more than twenty-one months after the latest possible accrual date of the claim. (Compl. ¶ 31).

Plaintiffs have not stated or otherwise suggested that Mary's hostile work environment claim arises under any other statute or legal theory. Indeed, the cases that Plaintiffs' Opposition Brief mentions that involve hostile work environment claims—(1) *Cutler v. Dorn*, 196 N.J. 419 (2008), (2) *Shepherd v. Hunterdon Dev. Ctr.*, 174 N.J. 1 (2002), and (3) *Toto v. Princeton Twp.*, 404 N.J. Super. 604 (App. Div. 2009)—were all brought under the NJLAD. *See Cutler*, 196 N.J. at 429-32; *Shepherd*, 171 N.J. at 6; *Toto*, 404 N.J. Super. at 609. Nevertheless, the legal foundation of Mary's hostile work environment claim is unclear from Plaintiffs' Complaint and it thus fails to give Defendants proper notice of the nature of the claim being asserted against them, in violation of Federal Rule of Civil Procedure 8(a). As such, the Court dismisses the hostile work environment claim asserted in Count I of Plaintiffs' Complaint without prejudice. If Plaintiffs choose to amend their Complaint, however, any attempt to bring a hostile work

environment claim pursuant to either the NJLAD or the CEPA would be unavailing for the aforementioned reasons and thus barred by the law of the case doctrine.

    B.    <u>Whether the Wrongful Constructive Discharge Claim May Proceed (Count I)</u>

Count I of Plaintiffs' Complaint alleges that Defendants are liable for "wrongful constructive discharge." (Compl. ¶¶ 40-46). The underlying legal theory of this claim is unclear from the Complaint. (*See id.*). The cases cited in Plaintiffs' Opposition Brief suggest four possibilities: (1) an NJLAD constructive discharge claim; (2) a CEPA constructive discharge claim; (3) a Title VII constructive discharge claim; and (4) a New Jersey common law *Pierce* wrongful discharge claim. (Pls.' Opp'n Br. 6-8, ECF No. 7).

Plaintiffs cannot bring claims under either the NJLAD or the CEPA for the reasons discussed above. Likewise, Plaintiffs cannot bring a constructive discharge claim under Title VII. Title VII prohibits an employer from discharging an employee because of her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). It does not prohibit an employer from discharging an employee because of her political affiliation, *Chimara v. Contra Costa Cnty. Gov't*, No. 12-00201, 2013 WL 1899801, at *2 n.2 (N. D. Cal. May 7, 2013), which is the Plaintiffs' alleged reason as to why the Board discharged Mary in this case. (*See* Compl. ¶¶ 53, 72).

Lastly, Plaintiffs cannot bring a *Pierce* wrongful discharge claim. In *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980), the Supreme Court of New Jersey "held that *an at-will employee*, wrongfully discharged in violation of 'a clear mandate of public policy,' has a common law cause of action against an employer." *D'Annuzio v. Prudential Ins. Co. of Am.*, 192 N.J. 110, 119 (2007) (emphasis added). Thus, only an at-will employee may bring a *Pierce* wrongful discharge claim. *See Tartaglia v. UBS PaineWebber Inc.*, 197 N.J. 81, 104 (2008)

("Seen in its historical context, *Pierce* created an avenue for an at-will employee, who otherwise had little, if any, means of redress for termination, to assert that his or her discharge was wrongful."). Plaintiffs do not allege that Mary was an at-will employee. Their Complaint instead alleges that Mary "was a tenured employee." (Compl. ¶ 7). Similarly, their Opposition Brief states not once, but twice that Mary had an employment contract. (Pls.' Opp'n Br. 12-13).

In any event, as noted above, the underlying legal theory of Mary's "wrongful constructive discharge" claim is unclear from Plaintiffs' Complaint. (Compl. ¶¶ 40-46). It thus violates Federal Rule of Civil Procedure 8(a) as it fails to give Defendants proper notice of the nature of the claim being asserted against them. Accordingly, the Court dismisses the "wrongful constructive discharge" claims brought in Count I of Plaintiffs' Complaint without prejudice. If Plaintiffs opt to amend their Complaint, any attempt to assert such a claim premised on the NJLAD, CEPA, Title VII, or *Pierce* will not be permitted as it would be banned by the law of the case doctrine, as previously stated, since this Court has already ruled on said matter.

C.    <u>Whether the Retaliation Claims May Proceed (Counts II through V)</u>

Counts II through V of Plaintiffs' Complaint allege retaliation claims on behalf of Mary.[2] (*Id.* at ¶¶ 47-77). Defendants argue that these claims are time barred.   (Defs. Bd. & Munoz's Br. 9-14, ECF No. 2-1). While the parties agree that a two-year limitations period applies to Mary's

---

[2] Specifically, Count II, titled "Retaliatory Discharge in Violation of Plaintiff's Constitutional Rights," alleges that "Defendants retaliated against [Mary] for exercising her rights to free speech and association in violation of the New Jersey Constitution, Article I, sections 1, 6, and 18." (Compl. ¶ 48). Count III, titled "Violation of the New Jersey Civil Rights Act," alleges that Defendants violated the NJCRA by retaliating against Mary for exercising her rights to freedom of speech and association under sections 6 and 8 of Article I of the New Jersey Constitution. (*Id.* at ¶¶ 53-54). Similarly, Count V, also titled "Violation of the [NJCRA]," alleges that Defendants violated Mary's substantive and procedural due process rights under the NJCRA by retaliating against her because of her political affiliations and because she exercised her right to free speech. (*Id.* at ¶ 72). Lastly, Count IV, according to its title, asserts a "§ 1983 Claim for Violation of First Amendment Right to Freedom of Speech of Government Employee."

8

retaliation claims,[3] they disagree over when those claims accrued.  On the one hand, Defendants argue that Mary's retaliation claims accrued on July 5, 2011, on or about which date the Board approved a resolution withholding Mary's increment and salary adjustment for the 2011-2012 school year.  (*Id.* at 9-10).  According to Defendants, the Board's adoption of that resolution was the last of a number of discrete retaliatory acts taken against Mary and each such act was individually actionable.  (*Id.* at 9-11).  On the other hand, Plaintiffs argue that Mary's retaliation claims accrued when her retirement became effective on July 1, 2012.  (*See* Pls.' Opp'n Br. 10).  On that date, according to Plaintiffs, the final sequence of a larger pattern of indiscrete retaliatory acts took place.  (*See id.*).  At bottom, the resolution of the parties' contentions hinges on the distinction between discrete acts and indiscrete acts.[4]

   Discrete acts are individually actionable while indiscrete acts (also known as continuing violations) are not unless they are aggregated to make out a claim under a hostile work environment theory.  *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).  A cause of action premised on a discrete act accrues when that act occurs.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for

---

[3] Plaintiffs do not specifically address whether the same statute of limitations analysis applies to both § 1983 and NJCRA retaliation claims.  Other courts that have addressed this issue in this District have concluded that it does, and this Court agrees with that conclusion.  As then-Chief Judge Garrett Brown, Jr. persuasively reasoned in *Brown v. City of Newark*, "[a]lthough the NJCRA contains no express statute of limitations, . . . the language of New Jersey's generally-applicable personal injury statute of limitations,[] combined with the NJCRA's similar purpose and design to § 1983, . . . convinces this Court that New Jersey's two-year limitation applies to the NJCRA."  No. 09-3752, 2010 WL 1704748, at *4 (D.N.J. Apr. 26, 2010) (citation omitted); *see also Citta v. Borough of Seaside Park*, No. 09-865, 2010 WL 3862561, at *10 n.3 (D.N.J. Sept. 27, 2010) (reaching the same conclusion).  As such, the Court's statute of limitation analysis applies to all of Mary's retaliation claims.

[4] Plaintiff' Opposition Brief cites to a number of cases for the proposition that their retaliation claims accrued on the date that Mary resigned.  (Pls.' Opp'n Br. 9-11).  Plaintiffs' reliance on these cases is misplaced.  Many of them are simply not binding on this Court because other federal district courts issued them.  The cases Plaintiffs cite that New Jersey courts issued—*Roa v. Lafe*, 200 N.J. 555 (2010), and *Keelan v. Bell Commc'ns Research*, 289 N.J. Super. 531, 539 (App. Div. 1996)—involved retaliatory discharge claims arising under the NJLAD and CEPA, respectively, and are thus not helpful to Plaintiffs for the reasons discussed earlier in this Opinion.

9

filing charges alleging that act."). The subsequent occurrence of a related discrete act does not reset the accrual date of a cause of action premised on an earlier discrete act. *Id.* ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). Thus, individually actionable discrete acts cannot be aggregated. *O'Connor*, 440 F.3d at 127. In contrast, indiscrete acts can be aggregated under a hostile work environment theory "so long as they are linked in a pattern of actions which continues into the applicable limitations period." *Id.* (citing *Morgan*, 536 U.S. at 105). At issue here is whether Mary's retaliation claims, which allege that Defendants retaliated against Mary because she exercised her constitutional rights to freedom of speech and association, are based on discrete acts. The Court holds that they are in light of the Third Circuit's holding in *O'Connor*.

In *O'Connor*, the Third Circuit held that a retaliatory act intended to punish a public employee for exercising her First Amendment rights is discrete and thus individually actionable "if under the circumstances it would be sufficient to 'deter a person of ordinary firmness' from exercising . . . her First Amendment rights." *Id.* at 128 (quoting *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000)). This "deterrence threshold," according to the Third Circuit, is "very low" since "a cause of action is supplied by all but truly de minimis violations." *Id.* (citing *Suppan*, 203 F.3d at 234-45). Indeed, under the right circumstances, "[e]ven 'an act of retaliation as trivial as failing to hold a birthday party for a public employee,' if 'intended to punish her for exercising her free speech rights,' may be actionable . . . ." *Id.* (quoting *Suppan*, 203 F.3d at 234-35).

Here, Plaintiffs' retaliation claims are apparently premised on Defendants' alleged commission of the following acts: (1) placing Mary on administrative leave and escorting her out of School No. 19 on March 7, 2008 (Compl. ¶¶ 10-11); (2) approving a resolution at a Board

10

meeting on March 19, 2008, acknowledging that Mary had been placed on administrative leave "pending conclusion of an ongoing investigation" without any explanation as to the nature of the investigation (*Id.* at ¶ 11); (3) approving a resolution at a Board meeting on June 24, 2010, withholding Mary's increment and salary adjustment for the 2010-2011 school year (*Id.* at ¶ 19); (4) ordering Mary to report each workday to the "rubber room" at the Mitchell building beginning on September 7, 2010 until the room was disbanded after "approximately ten months," apparently sometime in July 2011 (*Id.* at ¶¶ 21-23); and (5) approving a resolution at a Board meeting withholding Mary's increment and salary adjustment for the 2011-2012 school year, which Mary received notice of in a letter on July 5, 2011.[5]  (*Id.* at ¶ 26).

The Court concludes that each of these acts is discrete in nature because it would deter a person of ordinary firmness from exercising her constitutional rights. *See, e.g.*, *Brown*, 2010 WL 1704748 at *3-4 (finding that defendant city had committed a discrete retaliatory act when it transferred plaintiff, who was an administrative analyst, to positions beneath her title).  The Court's conclusion is further bolstered by the Third Circuit's clarification in *O'Connor* that discrete acts include, but are not limited to the following:  "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation."  440 F.3d at 127.  Each of Defendants' alleged retaliatory acts fall within one of these categories and thus pursuant to *O'Connor* they became actionable when they occurred rather than when Mary's retirement became effective on July 1, 2012.  Because none of the retaliatory acts as alleged by Plaintiffs fall within the two year statute of limitations, the Court dismisses Plaintiffs' retaliation claims (Counts II through V) without prejudice. *See, e.g.*, *Citta*, 2010 WL 3862561 at *10-12 (concluding that plaintiff's § 1983 and NJCRA retaliation

---

[5] Mary's decision to retire was not a discrete act committed by Defendants.  (*See* Compl. ¶ 31).

claims, which alleged that defendants violated his right to free speech under the First Amendment of the United States Constitution and Article I of the New Jersey Constitution, respectively, were time barred after applying *O'Connor*). Plaintiffs however will be given leave to amend their Complaint insofar as they can allege discrete retaliatory acts occurring within two years of the date they filed their original Complaint. It is unclear from Plaintiffs' Complaint whether Defendants committed any discrete retaliatory acts after July 5, 2011. (*See* Compl. ¶¶ 26-31).

> D.     Whether the Breach of Contract Claim May Proceed (Count VI)

Count VI of Plaintiffs' Complaint appears to allege a breach of contract claim. Specifically, Count VI alleges that "Defendants' actions in demoting, reassigning and eventually 'terminating' [Mary]" violated the terms of her employment. (Compl. ¶¶ 79-80). These terms are purportedly set forth in three places: (1) N.J.S.A. 18A:17-3; (2) N.J.A.C. 4A:2-5.1(b); and (3) the Board's Policy Manual. (*Id.*). At issue is whether Mary may assert a private cause of action against Defendants pursuant to any of these purported sources of employment terms.

N.J.S.A. 18A:17-3 applies solely to public school janitors. Mary allegedly worked for the Board as a secretary, not as a janitor. (*Id.* at ¶¶ 1, 7, 10, 36). Thus, Mary cannot rely on N.J.S.A. 18A:17-3 to assert a private cause of action as she attempts to do in Count VI.

N.J.A.C. 4A:2-5.1(b) prohibits "appointing authorities" from threatening or taking action against various types of civil servants based on their political activities or affiliations.[6]

---

[6] Specifically, N.J.A.C. 4A:2-5.1(b) provides:

> An appointing authority shall not take or threaten to take any action against an employee in the career service or an employee in the senior executive service with career status based on the employee's permissible political activities or affiliations. This subchapter shall also apply to State service employees in the unclassified service who do not serve in policy-making or confidential positions.

Supposing both that the Board is an "appointing authority" and that Mary is among the types of civil servants covered by N.J.A.C. 4A:2-5.1(b),[7] Defendant Murray points out that Mary had to first avail herself of certain administrative remedies before bringing her claim invoking that regulation.  (Def. Murray's Br. 6, ECF No. 5).  Specifically, she had to first appeal the Board's action to the Civil Service Commission within twenty days of the retaliatory action or the date on which she should reasonably have known of its occurrence pursuant to N.J.A.C. 4A:2-5.2.  Here, the Complaint does not allege that Mary did so; this is a critical omission.  *See Ferraro v. City of Long Branch*, 314 N.J. Super. 268, 287 (App. Div. 1998), *certif. denied*, 157 N.J. 541 (1998) (affirming dismissal of cause of action premised on violation of N.J.A.C. 4A:2-5.1(b) where plaintiff failed to exhaust administrative remedies).

The Board's Policy Manual, according to Plaintiffs' Complaint, guarantees "freedom of speech of employees and absence of political interference or repercussions for political views" in sections 4118.2, 4219.21, and 4218.2.  (Compl. ¶ 80).  Plaintiffs allege that Defendants' retaliatory acts against Mary violated these sections.  (*Id.*).  Plaintiffs argue that these allegations set forth sufficient facts to sustain a breach of contract claim under one of two theories:  (1) the implied contract theory recognized in *Woolley v. Hoffmann-LaRoche, Inc.*, 99 N.J. 284, *modified on other grounds*, 101 N.J. 10 (1985); and (2) the covenant of good faith and fair dealing theory. (Pls.' Opp'n Br. 12-13).  Neither theory is availing.

In *Woolley*, the Supreme Court of New Jersey held "that absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will."  99 N.J. at 285-86.  In other words,

---

[7] The parties do not address this issue in their briefs.

the terms of an employment manual "may alter an employee's at-will status by creating an implied contract between an employer and employee." *Wade v. Kessler Inst.*, 172 N.J. 327, 339 (2002) (citing *Woolley*, 99 N.J. at 297-98). Plaintiffs' reliance on *Woolley* is misplaced since, as discussed above, they allege that Mary was a tenured employee and not an at-will one. (Compl. ¶ 7; Pls.' Opp'n Br. 12-13). Even if Mary was an at-will employee, Plaintiffs' Complaint still fails to allege facts from which this Court can infer that the cited sections of the Board's Policy Manual actually contain an implied promise that Mary would be fired only for cause.[8]

Plaintiffs' invocation of the covenant of good faith and fair dealing in their Opposition Brief is surprising since nowhere in Count VI of their Complaint or elsewhere therein do the words "covenant of good faith and fair dealing" appear. Moreover, a defendant reading the sparse allegations set forth in Count VI would be unable to infer that an "implied convent of good faith and fair dealing" claim is what is being alleged. (Compl. ¶¶ 78-80). As such, to the extent that Plaintiffs' Complaint asserts such a claim, it fails to comply with Federal Rule of Civil Procedure 8(a)'s requirement that it place defendants on notice of the basis of the claims asserted against them.

For the foregoing reasons, the Court dismisses Count VI of Plaintiffs' Complaint without prejudice. Should Plaintiffs file an amended complaint asserting a covenant of good faith and fair dealing claim, the Court directs them to assert that claim as a separate count.

---

[8] Plaintiffs did not provide the Court with the text of sections 4118.2, 4219.21, and 4218.2 of the Board's Policy Manual. However, Defendants have provided the Court with section 4219.21, which the Court may now consider since it is explicitly relied on in Plaintiffs' Complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Section 4219.21 does not suggest that the Board could fire Mary only for cause. (Kumar-Thompson Decl., Ex. 3, ECF No. 2-5). It instead prohibits Board employees from engaging in political activities under certain circumstances and therefore does not support Plaintiffs' attempt to assert a breach of contract cause of action in Count VI of their Complaint. (*Id.*).

14

E.   <u>Whether the Intentional Infliction of Emotion Distress Claim May Proceed (Count VII)</u>

Count VII of Plaintiffs' Complaint alleges an intentional infliction of emotional distress claim. (Compl. ¶¶ 81-87). In New Jersey, when such a claim is asserted against a public entity, the requirements of the New Jersey Tort Claims Act ("NJTCA") apply. N.J.S.A. 59:1-1 *et seq.* The NJTCA provides that a person is "forever barred from recovering against a public entity or public employee if: (a) [she] failed to file the claim with the public entity within 90 days of accrual of the claim . . .; or (b) [t]wo years have elapsed since the accrual of the claim . . . ." N.J.S.A. 59:8-8. Here, Mary filed her Tort Claim Notice with the Board on September 24, 2012. (Kumar-Thompson Decl., Ex. 2, ECF No. 2-4). Defendants contend that the last possible date on which Mary's intentional infliction of emotional distress could have accrued was on July 5, 2011, the last date on which Plaintiffs allege a wrongful act occurred. (Defs. Bd. & Munoz's Br. 22-23). Because Plaintiffs filed their Tort Claim Notice with the Board long after the ninety day limit and no acceptable tolling reason has been alleged, Defendants argue that the NJTCA bars Mary's intentional infliction of emotional distress claim. The Court agrees.

In discussing the concept of accrual in the context of the NJTCA, the Supreme Court of New Jersey has noted that "[g]enerally, in the case of tortious conduct resulting in injury, the date of accrual will be the date of the incident on which the negligent act or omission took place." *Beauchamp v. Amedio*, 164 N.J. 111, 117 (2000) (citations omitted). Notably, "[t]he *only exception* to that well established notion of accrual is the case where the victim either is unaware that he has been injured or, although aware of an injury, does not know that a third party is responsible." *Id.* (emphasis added and citations omitted). Plaintiffs do not argue that either of these exceptions apply here. (*See* Pls.' Opp'n Br. 14). Furthermore, they fail to adequately allege that any wrongful acts occurred after July 5, 2011. (*See* Compl. ¶¶ 26-31). As such, the

15

Court dismisses Plaintiffs' intentional infliction of emotional distress claim without prejudice. Plaintiffs may amend Count VII of their Complaint, but only if they can allege facts suggesting that Defendants acted outrageously within ninety days of filing their Tort Claim Notice with the Board or a legally valid reason why the ninety day limit should be tolled or is not otherwise applicable.

F.     Whether the *Per Quod* Claim May Proceed (Count IX)

Count IX of Plaintiffs' Complaint alleges a *per quod* claim. (Compl. ¶¶ 88-90). Specifically, that count alleges that Defendants deprived Alfonso of Mary's consortium. (*Id.* at ¶ 90). New Jersey courts "have characterized [a *per quod* claim] as a derivate claim, not a separate cause of action." *Tichenor v. Santillo*, 218 N.J. Super. 165, 173 (App. Div. 1987) (collecting cases). Such a claim is "only maintainable by reason of a spouse's personal injury," and thus "depends upon and is incidental to the personal injury action." *Id.* (citing *Rex v. Hutner*, 26 N.J. 489, 492 (1958)). The Court has dismissed all of Mary's personal injury actions. Because Alfonso's *per quod* claim cannot proceed on its own, the Court dismisses it without prejudice.

G.     Whether the Punitive Damages Claim May Proceed (Count X)

Count X of Plaintiffs' Complaint alleges a punitive damages claim. (Compl. ¶¶ 91-93). "[A] claim for punitive damages may lie only where there is a valid underlying cause of action." *Smith v. Whitaker*, 160 N.J. 221, 235 (1999) (citation omitted). Since the Court has dismissed all of Plaintiffs' underlying causes of action, so too does it dismiss their punitive damages cause of action. The Court does so without prejudice.

16

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motions to dismiss

Plaintiffs' Complaint without prejudice.  An appropriate Order accompanies this Opinion.


DATED:  _17_ of July, 2014

 

 

 

JOSE L. LINARES
U.S. DISTRICT JUDGE