**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARY BORRELLO, et. al.,<br><br>       Plaintiffs,<br><br>v.<br><br>ELIZABETH BOARD OF EDUCATION, et al.,<br><br>       Defendants. | Civil Action No. 14-3687 (JLL) (JAD)<br><br><br>**OPINION** |

**LINARES,** District Judge**.**

This matter comes before the Court by way of Defendants' motions to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [Docket Entry Nos. 16 and 17].[1] The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motions to dismiss are **granted in part**. Counts One, Two, Four, Five, Six, Seven, Twelve, Thirteen and Fourteen of Plaintiffs' Amended Complaint are dismissed *with* prejudice. Counts Three, Eight, Nine, Ten, Eleven, Fifteen, Sixteen and Seventeen are remanded to the Superior Court of New Jersey, Law Division, Union County.

---

[1] On September 11, 2014, Defendant Karen Murray filed a motion to dismiss. On September 12, 2014, Defendant Elizabeth Board of Education and Pablo Munoz filed their own motion to dismiss Plaintiffs' Amended Complaint.

## I.      BACKGROUND

Plaintiffs Alfonso Borrello, Jr. and Mary Borrello (collectively "Plaintiffs") are husband and wife.  From 1986 to July 1, 2012, Mary worked as a secretary for Defendant the Elizabeth Board of Education (the "Board"), where Defendant Pablo Munoz works as the superintendent. (Am. Compl., ¶¶ 1, 2).  Over the years, Mary received numerous annual personnel evaluations, signed by her direct supervisor, awarding her the highest possible ratings in the categories of skill, punctuality, cooperation, personality, initiative, and composite rating.  (*Id.* at ¶ 8).  At the time of the events underlying this action, Mary had tenure and worked in the main office of School No. 19, also known as Woodrow Wilson School.  (*Id.*, ¶ 17).

In February 2008, Plaintiffs' daughter, a special needs student in the Elizabeth School District, was on a bus that went missing for hours while transporting her home.  (*Id.* at ¶ 14).  After this incident, Plaintiffs attended the next scheduled Board meeting, seeking answers concerning the bus incident. (*Id.*).  Plaintiffs were told that there would be an investigation.  (*Id.*).  No one ever followed up with Plaintiffs.  (*Id.*).

At or about the time of the meeting, Alfonso was seeking election as a Board member.  (*Id.* at ¶ 15).  Mary had previously supported and contributed to political fundraisers related to the Board earlier in her career, upon succumbing to pressure from others, but she eventually stopped doing so.  (*Id.* at ¶ 10).

On or about March 7, 2008, Mary was told to report to the Board's office, the Mitchell Building, where she was notified that she was being placed on administrative leave with pay.  (*Id.* at ¶ 17).  She was permitted to return to School No. 19 to retrieve her belongings.  (*Id.*).  Shortly thereafter, Mary received a letter, dated March 20, 2008, informing her that the Board had approved a resolution during its March 19, 2008 meeting placing her on administrative leave,

effective March 7, 2008, "pending conclusion of an ongoing investigation." (*Id.* at ¶ 18). Mary was instructed to stay home and not to report to School No. 19 until further notice. (*Id.* at ¶ 20). The Board never disclosed the nature of the investigation to Plaintiffs and never "officially" charged Mary with any form of misconduct. (*Id.*). Because the Board did not "officially" charge Mary, the Elizabeth Education Association was unable to assign her an attorney. (*Id.* at ¶ 22).

On or about July 19, 2010, Defendant Karen Murray, the Board's Director of Human Resources, advised Mary in writing that the Board had approved a resolution during its June 24, 2010 meeting withholding her increment and salary adjustment for the 2010-2011 school year. (*Id.* at ¶ 24). Mary next heard from Murray on September 2, 2010, at which time she received a letter ordering her to report to the Mitchell Building on September 7, 2010. (*Id.* at ¶ 26).

For approximately the next ten months, Mary reported to the Mitchell Building each workday from 8:00 a.m. to 4:00 p.m., with a lunch break between noon and 1:00 p.m. (*Id.* at ¶¶ 26, 27). Throughout that time, the Board assigned Mary to a room known as the "rubber room," located down the hall from Murray's office, along with other Board employees that were awaiting disciplinary action. (*Id.*). The rubber room lacked ventilation, was dirty, and contained scattered materials. (*Id.* at ¶ 29). Per Murray's instructions, those assigned to the rubber room were prohibited from leaving the room, eating in the room without a physician's note, or talking on their phones. (*Id.*). The ban on phone conversations extended to bathroom breaks. (*Id.*). This treatment caused Mary to feel totally inadequate and to have poor self-worth. (*Id.* at ¶ 30). Upon the disbandment of the rubber room, Murray ordered Mary to stay home until further notice. (*Id.* at ¶ 31).

On July 5, 2011, Mary received a letter from Murray advising her that the Board had approved a resolution withholding her increment and salary adjustment for the 2011-2012 school

year. (*Id.* at ¶ 32). While Mary remained at home, she was, on at least one occasion, told by an unidentified individual that her check was in the mail, even though she failed to receive it days later. (*Id.*, ¶ 36). Eventually, she decided to have her husband Alfonso pick her checks. (*Id.*). Initially, Karen Murray would not give Mary's checks to Alfonso, even though she allegedly knew him to be Mary's husband. (*Id.*). Alfonso was only permitted to pick up Mary's checks once Mary provided the Board of Education with written authorization to allow her husband to transact any and all business on her behalf. (*Id.*).

In the months leading up to Mary's retirement, Alfonso allegedly made "at least a dozen telephone calls inquiring about Mary's job status, whether she would be on a transfer list to active assignment and the outcome of the long term 'investigation.'" (*Id.*, ¶ 41). In particular, the Amended Complaint alleges that Alfonso called Karen Murray, Maria Molina, Robert Stigliano and Business Administrator Harold Kennedy, that "most of the time" he was not able to reach the party he was trying to call, and that he left "detailed" voicemail messages. (*Id.*, ¶¶ 42, 43). The Amended Complaint alleges that no one answered his questions or returned any of his calls. (*Id.*). The Amended Complaint goes on to *speculate* that the Board must have determined, during this time period, that her increment would again be withheld for the 2012-2013 school year. (*Id.*, ¶ 46). Finally, the Amended Complaint alleges that "during the time frame immediately prior to Plaintiff's Mary Borrello's retirement," former co-workers refused to be "friends" with her on Facebook. (*Id.*, ¶ 47).

Eventually, Mary retired from the Board, effective July 1, 2012. (*Id.* at ¶ 48). Mary had intended to continue working for the Board in her secretarial capacity until her sixty-fifth birthday and beyond if her health allowed her to do so. (*Id.* at ¶ 54). Upon her retirement, Defendants never paid Mary for her unused vacation time or her accumulated sick days. (*Id.*, ¶ 55). Nor did

4

Defendants pay Mary the $1,000 stipend that she claims her perfect attendance record entitled her to receive.  (*Id.*).  The Amended Complaint alleges that, to date, the Board still has not paid her for unused sick and vacation time

Based on these events, which Plaintiffs maintain were "politically motivated," Plaintiffs filed an initial complaint before the New Jersey Superior Court, Union County on April 14, 2014. (*Id.* at ¶¶ 1-93).  On June 9, 2014, Defendants removed Plaintiffs' action to this Court.  (Notice of Removal, ECF No. 1).  The Court has federal question jurisdiction over Plaintiffs' 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  On July 17, 2014, this Court entered an Opinion and Order dismissing various claims asserted in Plaintiffs' original complaint, with leave to amend (in accordance with the directives contained therein).  On August 15, 2014, Plaintiffs' filed an Amended Complaint.  Defendants have now filed motions to dismiss Plaintiffs' Amended Complaint.

## II.    LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments

without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir. 1994).


## III.    DISCUSSION

Plaintiffs' Amended Complaint contains seventeen (17) claims, all of which are the subject of Defendants' motions to dismiss.

### A.    § 1983 Claims

Defendants argue that Plaintiffs' section 1983 claims are all time-barred.  This Court addressed the issue in its prior Opinion and will only repeat its analysis where necessary to provide context for the pending motions.

The Court begins by noting that Defendants may prevail on the statute of limitations at the motion to dismiss stage if it is apparent from the face of the complaint that the cause of action is barred.  *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (citation omitted). "If the allegations, taken as true, show that relief is barred by the applicable statute of limitations, a complaint is subject to dismissal for failure to state a claim." *Cain v. Dep't of Pub. Welfare*, 442 F. App'x. 638 (3d Cir. 2011) (citation omitted); *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir.1987)).

Generally speaking, section 1983 does not contain its own statute of limitations.  Rather, a § 1983 claim "is characterized as a personal injury claim and thus is governed by the applicable state's personal injury statute of limitations." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  In New Jersey, plaintiffs must file personal injury actions within two years of the accrual date. N.J.S.A. § 2A:14–2(a).  Therefore a § 1983 claim arising in New Jersey will be time-barred if more than two years has passed since its accrual.

6

Similarly, the Court concluded in its prior Opinion that civil rights claims brought under New Jersey's Civil Rights Act are also subject to a two-year statute of limitations. *See Brown v. City of Newark*, 2010 U.S. Dist. LEXIS 40564, 2010 WL 1704748, at * 4 (D.N.J. Apr.26, 2010); *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety,* Civ. No. 02–5470, 2007 U.S. Dist. LEXIS 22871, at *3 (D.N.J. Mar. 29, 2007). Finally, under federal law, a § 1983 cause of action accrues when the allegedly wrongful act occurred. *See Wallace v. Kato*, 549 U.S. 384, 388 2007) ("It is 'the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when 'the plaintiff can file suit and obtain relief.' ") (internal citations and alterations omitted).

## 1.     Retaliation (Counts One, Five, Six, Twelve, Thirteen and Fourteen)

Counts One, Five, Six, Twelve, Thirteen and Fourteen of Plaintiffs' Amended Complaint all allege various retaliation claims on behalf of Mary. In particular, Count One alleges that Defendants violated Mary's First Amendment rights by retaliating against her based upon her non-association with the Board members' political choices and her support for her husband's candidacy for the Elizabeth Board of Education. Count Five, Six and Thirteen all allege that Defendants' retaliatory, adverse employment decisions and post-employment decisions were motivated by Plaintiff's exercise of her right to free political association thereby depriving her of her rights under Article 1 of the New Jersey State Constitution,[2] and in violation of her substantive and procedural

---

[2] New Jersey courts rely on federal First Amendment principles when interpreting the free speech clause of the New Jersey Constitution. *Johnson v. Yurick*, 156 F. Supp.2d 427, 436 (D.N.J. 2001), *aff'd* 39 Fed. Appx. 742 (3d Cir.2002); *Binkowski v. State*, 322 N.J. Super. 359, 369 (App. Div. 1999). The same analysis a district court applies to First Amendment free speech claims applies as well to free speech claims under the New Jersey Constitution. *Id.*

due process rights under the New Jersey Civil Rights Act.[3]  Count Twelve alleges that Defendants commenced an investigation of Plaintiff in retaliation for her support of her husband's candidacy for the Elizabeth Board of Education in violation of the First and Fourteenth Amendments of the United States Constitution.  Count Fourteen also contains a § 1983 claim premised on Defendants' alleged violation of Mary's First Amendment right to freedom of speech.

The Court begins by noting that Plaintiffs have asserted numerous overlapping and duplicative claims, as illustrated above.  Moreover, Plaintiffs have chosen to caption certain claims with a variety of causes of action that make it entirely unclear to the Court what particular claim is being asserted.  *See, e.g.,* Count Eleven ("Breach of contract hostile work environment and wrongful constructive discharge).  This has made the Court's role in assessing the plausibility of Plaintiffs' claims unnecessarily difficult.  This is particularly problematic given that Plaintiffs were already given adequate notice that the legal theory underlying their "wrongful constructive discharge" claim and "hostile work environment" claim was unclear.  Rather than clarifying the legal theories under which such claims are asserted, Plaintiffs have simply added more duplicative claims and continue to use the same conclusory terminology in a repetitive manner.  Such pleading violates Rule 8(a) of the Federal Rules of Civil Procedure and could be dismissed on such basis alone.  In any event, the Court has made every effort to carefully and liberally construe all claims asserted in Plaintiffs' Amended Complaint.

---

[3] The NJCRA is interpreted as analogous to § 1983.  *See Szemple v. Correctional Medical Services, Inc.,* 493 Fed. Appx. 238, 241, 2012 WL 3090831, 2 (3d Cir. July 31, 2012).  In any event, the Court already ruled that the NJCRA does not establish a cause of action for political discrimination or political retaliation.

8

Turning now to Defendants' motions, Defendants move to dismiss all retaliation claims as time-barred.  This Court previously held that a two-year statute of limitations applies to all of Plaintiffs' retaliation claims.  In particular, the Court held:

> While the parties agree that a two-year limitations period applies to Mary's retaliation claims, they disagree over when those claims accrued.  On the one hand, Defendants argue that Mary's retaliation claims accrued on July 5, 2011, on or about which date the Board approved a resolution withholding Mary's increment and salary adjustment for the 2011-2012 school year.  (*Id.* at 9-10).  According to Defendants, the Board's adoption of that resolution was the last of a number of discrete retaliatory acts taken against Mary and each such act was individually actionable.  (*Id.* at 9-11).  On the other hand, Plaintiffs argue that Mary's retaliation claims accrued when her retirement became effective on July 1, 2012.  (*See* Pls.' Opp'n Br. 10).  On that date, according to Plaintiffs, the final sequence of a larger pattern of indiscrete retaliatory acts took place.  (*See id.*).  At bottom, the resolution of the parties' contentions hinges on the distinction between discrete acts and indiscrete acts.
>
> Discrete acts are individually actionable while indiscrete acts (also known as continuing violations) are not unless they are aggregated to make out a claim under a hostile work environment theory.  *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).  A cause of action premised on a discrete act accrues when that act occurs.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act.").  The subsequent occurrence of a related discrete act does not reset the accrual date of a cause of action premised on an earlier discrete act.  *Id.* ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").  Thus, individually actionable discrete acts cannot be aggregated.  *O'Connor*, 440 F.3d at 127.  In contrast, indiscrete acts can be aggregated under a hostile work environment theory "so long as they are linked in a pattern of actions which continues into the applicable limitations period."  *Id.* (citing *Morgan*, 536 U.S. at 105).  At issue here is whether Mary's retaliation claims, which allege that Defendants retaliated against Mary because she exercised her constitutional rights to freedom of speech and association, are based on discrete acts.  The Court holds that they are in light of the Third Circuit's holding in *O'Connor*.
>
> In *O'Connor*, the Third Circuit held that a retaliatory act intended to punish a public employee for exercising her First

Amendment rights is discrete and thus individually actionable "if under the circumstances it would be sufficient to 'deter a person of ordinary firmness' from exercising . . . her First Amendment rights." *Id.* at 128 (quoting *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000)). This "deterrence threshold," according to the Third Circuit, is "very low" since "a cause of action is supplied by all but truly de minimis violations." *Id.* (citing *Suppan*, 203 F.3d at 234-45). Indeed, under the right circumstances, "[e]ven 'an act of retaliation as trivial as failing to hold a birthday party for a public employee,' if 'intended to punish her for exercising her free speech rights,' may be actionable . . . ." *Id.* (quoting *Suppan*, 203 F.3d at 234-35).

Here, Plaintiffs' retaliation claims are apparently premised on Defendants' alleged commission of the following acts: (1) placing Mary on administrative leave and escorting her out of School No. 19 on March 7, 2008 (Compl. ¶¶ 10-11); (2) approving a resolution at a Board meeting on March 19, 2008, acknowledging that Mary had been placed on administrative leave "pending conclusion of an ongoing investigation" without any explanation as to the nature of the investigation (*Id.* at ¶ 11); (3) approving a resolution at a Board meeting on June 24, 2010, withholding Mary's increment and salary adjustment for the 2010-2011 school year (*Id.* at ¶ 19); (4) ordering Mary to report each workday to the "rubber room" at the Mitchell building beginning on September 7, 2010 until the room was disbanded after "approximately ten months," apparently sometime in July 2011 (*Id.* at ¶¶ 21-23); and (5) approving a resolution at a Board meeting withholding Mary's increment and salary adjustment for the 2011-2012 school year, which Mary received notice of in a letter on July 5, 2011. (*Id.* at ¶ 26).

The Court concludes that each of these acts is discrete in nature because it would deter a person of ordinary firmness from exercising her constitutional rights. *See, e.g.*, *Brown*, 2010 WL 1704748 at *3-4 (finding that defendant city had committed a discrete retaliatory act when it transferred plaintiff, who was an administrative analyst, to positions beneath her title). The Court's conclusion is further bolstered by the Third Circuit's clarification in *O'Connor* that discrete acts include, but are not limited to the following: "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation." 440 F.3d at 127. Each of Defendants' alleged retaliatory acts fall within one of these categories and thus pursuant to *O'Connor* they became actionable when they occurred rather than when Mary's retirement became effective on July 1, 2012. Because none of the retaliatory acts as alleged by Plaintiffs fall within the two year statute of limitations,

the Court dismisses Plaintiffs' retaliation claims (Counts II through V) without prejudice. *See, e.g.*, *Citta*, 2010 WL 3862561 at *10-12 (concluding that plaintiff's § 1983 and NJCRA retaliation claims, which alleged that defendants violated his right to free speech under the First Amendment of the United States Constitution and Article I of the New Jersey Constitution, respectively, were time barred after applying *O'Connor*). Plaintiffs however will be given leave to amend their Complaint insofar as they can allege discrete retaliatory acts occurring within two years of the date they filed their original Complaint. It is unclear from Plaintiffs' Complaint whether Defendants committed any discrete retaliatory acts after July 5, 2011. (*See* Compl. ¶¶ 26-31).

July 17, 2014 Opinion. Thus, the Court held, in pertinent part, that each of Defendants' alleged retaliatory acts constitute discrete acts and thus became actionable when they occurred, rather than when Mary's retirement became effective on July 1, 2012. Plaintiffs were given leave to amend this claim only to the extent that they could "allege discrete retaliatory acts occurring within two years of the date they filed their original Complaint"—April 14, 2014.

Plaintiffs have amended their retaliation claims by including the following facts in the Amended Complaint: (1) at some point between July 2011 (the date on which she received the letter from the Board, discussed above) and July 2012 (her date of retirement), Mary began having her husband pick up her paychecks in person because she failed to receive at least one such payment in the mail in a timely fashion (Am. Compl., ¶¶ 32-36); (2) in the months leading up to Mary's retirement, Alfonso allegedly made "at least a dozen telephone calls inquiring about Mary's job status" to Karen Murray, Maria Molina, Robert Stigliano and Business Administrator Harold Kennedy, that "most of the time" he was not able to reach the party he was trying to call, and that he left "detailed" voicemail messages, none of which were answered (Am. Compl., ¶¶ 42, 43); (3) the Amended Complaint goes on to *speculate* that the Board must have determined, during the months leading up to Mary's retirement, that her increment would again be withheld for the

11

2012-2013 school year (Am. Compl., ¶ 46); and (4) "during the time frame immediately prior to Plaintiff's Mary Borrello's retirement," former co-workers refused to be "friends" with her on Facebook. (*Id.*, ¶ 47).

Having carefully considered the foregoing facts, the Court concludes, for the reasons that follow, that none of the new statements alleged by Plaintiff contain sufficient factual content to allow the Court to draw the reasonable inference that any of the Defendants engaged in any affirmative retaliatory acts within two years of the date on which Plaintiffs filed their complaint in this matter (April 14, 2014).[4]

As to the allegation regarding Mary's decision to have her husband pick up her paychecks, the Amended Complaint does not specify when she allegedly failed to receive a paycheck or how many times this allegedly occurred. Nor does the Amended Complaint otherwise provide any facts that would allow the Court to draw the reasonable inference that Mary's failure to receive her paycheck(s) in the mail resulted from any affirmative acts by Defendants, as opposed to, e.g., mail-related delays. Without more, the Court does not conclude that the circumstances surrounding Mary's decision to have her husband pick up her paycheck in person constitutes an actionable act of retaliation, much less within the relevant time period. *See generally Dombrosky v. Stewart*, 555 Fed. Appx. 195, 197-198 (3d Cir. 2014) ("[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient

---

[4] Nor have Plaintiffs now alleged any pattern of actions by any of the Defendants that would otherwise be subject to a continuing violations theory. *See generally O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006) (explaining that "the 'hostile workplace environment' theory is designed explicitly to address situations in which the plaintiff's claim is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant" but clarifying that "time-barred claims cannot be resurrected by being aggregated and labeled continuing violations").

to deter a person of ordinary firmness from exercising his First Amendment rights.' " The alleged conduct must have more than a *de minimis* impact on plaintiff's First Amendment rights.") (citations omitted).

Next, Plaintiffs allege that in the months leading up to Mary's retirement (in particular, April and May 2012), Alfonso allegedly made "at least a dozen telephone calls inquiring about Mary's job status" to Karen Murray, Maria Molina, Robert Stigliano and Business Administrator Harold Kennedy, that "most of the time" he was not able to reach the party he was trying to call, and that he left "detailed" voicemail messages, none of which were answered (Am. Compl., ¶¶ 42, 43). The Amended Complaint goes on to *speculate* that the Board must have determined (during the months leading up to Mary's retirement) that her increment would again be withheld for the 2012-2013 school year (Am. Compl., ¶ 46). Such statement is based on pure speculation and contains absolutely no facts that would allow the Court to draw the reasonable inference that any affirmative retaliatory decision was made (or acts in engaged in) by Defendants concerning Mary's job status (and/or benefits for the 2012-2013 school year) after April 14, 2012. To the contrary, the only facts properly alleged in the Amended Complaint suggest that Defendants' last act of affirmative retaliatory conduct took place on or about July 2011—the date on which Mary received the letter from the Board indicating that her increment and salary adjustment for the 2011-2012 school year would be withheld. (*Id.* at ¶ 32). The mere fact that Plaintiffs' subsequent phone calls went unanswered does not, without more, allow the Court to draw the reasonable inference that a new unlawful act had occurred. To the contrary, based on the facts pled, the only reasonable inferences that can be drawn from Defendants' alleged failure to respond to Plaintiffs' phone calls inquiring about Mary's job status is that (a) no decision had yet been made vis-à-vis Mary's employment status (and/or increment or salary adjustment) for the 2012-2013 school year,

particularly since there is no allegation that Mary received any type of letter in the mail notifying her of any formal decision by the Board (as had occurred the year before—in July 2011), and/or (b) that such circumstances were merely the consequences of (and/or ill effects from) the original violation (of placing her on administrative leave and/or withholding her increment and salary adjustment for the 2011-2012 school year).  *See generally Weis-Buy Services, Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005); *Cibula v. Fox,* 570 Fed. Appx. 129, 136 (3d Cir. 2014) ("Even assuming disclosure occurred within the limitations period, we agree with the District Court that the abuse and harassment Cibula allegedly suffered as a result of these disclosures is best viewed as 'merely the consequences of the original act of deeming [him] a sex offender in 2007.' ")

Finally, the Amended Complaint alleges that "during the time frame immediately prior to Plaintiff's Mary Borrello's retirement," former co-workers refused to be "friends" with her on Facebook.  (*Id*., ¶ 47).  As a preliminary matter, Plaintiffs cite to no binding legal authority—nor is the Court is aware of any—suggesting that the act of declining to be "friends" with a person on a social media website constitutes an actionable act of retaliation under § 1983.  *See, e.g., Brennan v. Norton,* 350 F.3d 399, 419 (3d Cir. 2003) ("A public employer 'adversely affects an employee's First Amendment rights when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights.' 'On the other hand, courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.'").  Even if accepted as true, and even if the Court were to overlook the *de minimis* nature of the allegation, such acts were allegedly committed by Mary's co-workers—not Defendants.  Moreover, Plaintiffs do not specify the timeframe in which such alleged actions by

14

Mary's former co-workers took place.  In light of foregoing, the Court cannot draw the reasonable inference that such alleged actions—even *if* they constituted actionable acts of retaliation—constitute affirmative acts of retaliation by any of the Defendants and/or occurred within two years of April 14, 2014.

As previously stated, a § 1983 claim arising in New Jersey will be time-barred if more than two years has passed since its accrual.  A section 1983 cause of action accrues when the allegedly wrongful act occurred—not when the full extent of the injury comes to be known.  *See Wallace v. Kato,* 549 U.S. 384, 391 (2007) ("The cause of action accrues even though the full extent of the injury is not then known or predictable.") (citation omitted).   Plaintiffs were aware that the Board had passed a resolution placing Mary on administrative leave with pay since March 2008 (Am. Compl., ¶ 17).   They were also aware of the Board's subsequent decision to withhold Mary's increment and salary adjustment on July 5, 2011. (*Id*., ¶ 32).   At a minimum, the law required Plaintiffs to sue within two years of the later date.   Yet Plaintiffs waited until April 2014 to file their claims of retaliation.  Because Plaintiffs have failed to allege any actionable acts of retaliation by any of the Defendants that occurred within two years of April 2014, Plaintiffs' § 1983 retaliation claims must be dismissed, with prejudice, as time-barred.  *See, e.g., Marcum v. Harris*, 328 Fed. Appx. 792, 796 (3d Cir. 2009) ("Marcum was aware of his placement on April 8, 2004, and by August 19, 2004 he had received three letters from the administration of the STU informing him that the placement would not be revisited unless he attended group therapy. At minimum, '[t]he law required him to sue within two years of the [later date].'") (citation omitted).[5]

---

[5] *See generally Heath v. Shannon*, 442 Fed. Appx. 712, 717-718 (3d Cir. 2011) ("[T]he District Court properly held that the claims arising out Heath's efforts to obtain treatment in the 1990s are time-barred. Heath has not established a basis for equitably tolling the limitations period, and his

## 2.    Due Process Claims (Count Four)

Plaintiffs assert a substantive and procedural due process claim in Count Four of the Amended Complaint.  The Court construes this claim as alleging that Defendants' actions in placing Mary on administrative leave, assigning her to the rubber room pending investigation, withholding her increment and salary adjustment for the 2011-2012 school year without providing her with an explanation or the fruits of the investigation constitutes a violation of her Fourteenth Amendment substantive and procedural due process rights.   As stated above, a § 1983 cause of action accrues when the allegedly wrongful act occurred. *See Wallace,* 549 U.S. at 388.

Plaintiffs' due process claim is premised on the following facts: "Defendants violated Plaintiffs' constitutional rights of due process by placing her on administrative leave and assigning her to the rubber room pending an 'investigation,' the nature or outcome of which has never been disclosed, subjecting her to other adverse employment actions and constructively discharging her from employment and never providing Plaintiff with the results of the so called 'investigation.'" (Am. Compl., Count Four).  This Court has previously held that any unlawful acts by the Board occurring prior to April 2012 are barred by the two-year statute of limitations which governs all claims brought pursuant to § 1983.  Thus, the Board's March 2008 decision to place Mary on administrative leave with pay and/or its July 5, 2011 resolution to withhold Mary's increment and salary adjustment cannot form the basis of her due process claims.  The new facts alleged by

---

"continuing violation" theory fails because the alleged incidents of improper medical care in 1995 and 1996 are individually actionable and bear no connection to the treatment he received starting in 2003."); *McCreary v. Redevelopment Authority of City of Erie,*  427 Fed. Appx. 211, 215 (3d Cir. 2011) ("In sum, we discern no error in the District Court's determination that McCreary's federal claims accrued, at the latest, when the building was razed, on November 23, 2005. Her filing of this suit on December 1, 2009—more than four years after destruction of the building—renders her claims under §§ 1981 and 1983 untimely filed.").

16

Plaintiff (discussed above in the context of Plaintiffs' retaliation claims) do not constitute separate unlawful acts.  Moreover, the Court held in its prior Opinion that, based on the facts pled, Plaintiffs cannot bring a constructive discharge claim pursuant to NJLAD, CEPA and/or Title VII.  The Court also held that Plaintiffs could not bring a *Pierce* wrongful discharge claim under New Jersey law.   Notwithstanding Plaintiffs' attempt to re-introduce passing references to the term "constructive discharge" throughout the Amended Complaint, such holdings are now law of the case; as such, the Court has no basis on which to conclude that any of Plaintiffs' § 1983 accrued on the date of Plaintiffs' retirement.

Thus, based on the facts pled, Plaintiffs' due process claims accrued, *at the latest*, on July 5, 2011—the last date on which the Board allegedly engaged in any affirmative unlawful conduct (i.e., by passing a resolution to withhold Mary's increment and salary adjustment without providing her with an opportunity to contest their decision).  Because Plaintiffs did not assert any procedural or substantive due process claims until April 2014, such claims are barred by the applicable two-year statute of limitations.  *See, e.g., Cibula v. Fox,*  570 Fed. Appx. 129, 134 (3d Cir. 2014) ("It is apparent from the face of the amended complaint that Cibula's procedural due process claims against both the Corrections and Parole Defendants are time barred, as they accrued over two years before he filed suit on October 15, 2012. His claim against the Corrections Defendants accrued on December 28, 2007 (nearly five years before he filed his complaint), when he arrived at Mercer and was summarily labeled a sex offender without receiving any opportunity to contest the classification. Given that Cibula received no process at all, a reasonable person would have known at this point that the Corrections Defendants violated his procedural due

process rights.").[6]   Defendants' motion to dismiss Plaintiffs' procedural and substantive[7] due

process claims is granted.  Such claims are dismissed *with* prejudice as time-barred.


### 3.      Conspiracy Claims (Counts Two and Seven)

Counts Two and Seven allege that Defendants conspired to violate Plaintiffs' First, Fifth

and Fourteenth Amendment Rights, as well as the New Jersey Constitution and the New Jersey

Civil Rights Act, , N.J.S.A. 10:6–2 ("NJCRA").  The NJCRA was modeled after § 1983, and thus

courts in New Jersey have generally looked at claims under the NJCRA "through the lens of §

1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417 443–44 (D.N.J. 2011); *see also Chapman*

---

[6] *See also Lindquist v. Buckingham Twp*., 68 Fed. Appx. 288, 289-290 (2003) ("[P]laintiffs' substantive due process claims were properly dismissed because plaintiffs failed to file suit before the applicable Pennsylvania two-year statute of limitations expired.  They were aware of their constitutional injuries on September 3, 1998 when their attorneys filed lawsuits in the Court of Common Pleas of Bucks County on the same facts which they allege in the present federal action violated their civil rights.").

[7] Even assuming, *arguendo*, that Plaintiffs' substantive due process claim was not time-barred, it would, in any event, fail as a matter of law.  The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 138 (3d Cir. 2000).  Thus, while the Fourteenth Amendment protects certain property interests, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Id*. at 140 (quoting *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989)).  The Third Circuit has so far limited non-legislative substantive due process review to cases involving real property ownership and has expressly held that a plaintiff's property interest in his tenured public employment was not a fundamental right worthy of substantive due process protection.  *See Nicholas*, 227 F.3d at 141-43 ("Nicholas's tenured public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution.").  In light of the foregoing, the Court concludes that Plaintiffs' have failed to state a facially plausible substantive due process claim.  In particular, Plaintiffs have failed to allege facts that would allow this Court to draw the reasonable inference that Mary's interest in her tenured public employment constitutes a protected property interest to which the substantive component of the Due Process Clause applies, and thus that a constitutional violation has occurred.

*v. New Jersey*, 2009 U.S. Dist. LEXIS 75720, at *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart...."); *Armstrong v. Sherman*, No 09–716 2010 U.S. Dist. LEXIS 55616, at *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 ...."); s*ee generally Hedges v. Musco*, 204 F.3d 109, 121 n. 12 (3d Cir.2000) (concluding that New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment). Thus, this Court's analysis of Plaintiffs' § 1983 conspiracy claim also applies to Plaintiffs' conspiracy claims under New Jersey law.

In order to demonstrate the existence of a conspiracy under section 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Royster v. Beard*, 308 Fed. Appx. 576, 579 (3d Cir. 2009). Thus, in order to survive a Rule 12(b)(6) motion, Plaintiffs "allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. The Supreme Court of N.J.,* 588 F.3d 180, 185 (3d Cir. 2009). In this regard, a plaintiff must allege that two or more co-conspirators reached an agreement for the purpose of depriving him of his constitutional rights under color of state law. *See, e.g., Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993). "It is not enough to allege that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997). To the contrary, Plaintiff must show that the alleged conspirators "directed themselves toward an unconstitutional action by virtue of a mutual understanding or agreement." *Chicarelli v. Plymouth Garden Apartments*, 551 F.Supp. 532, 539 (E.D. Pa. 1982). This requires facts

suggesting a "meeting of the minds." *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 (1970)).

As stated above, Plaintiffs' § 1983 claims accrued, at the latest, on July 5, 2011—the last date on which the Board allegedly engaged in any affirmative unlawful conduct.   Having determined that Plaintiffs' Amended Complaint fails to allege any affirmative unlawful actions (or overt acts) by any of the Defendants that took place within two years of the date on which the Amended Complaint was filed, Defendants' motion to dismiss Plaintiffs' conspiracy claims as time-barred is thus granted.[8]  *See generally Shrey v. Foresman*, 505 Fed. Appx. 122, 123 (3d Cir. 2012 ("[T]he filing deadline for a civil rights conspiracy claim 'runs from each overt act causing

---

[8] Even assuming, *arguendo*, that Plaintiffs' conspiracy claims were not time-barred, the allegations in Plaintiffs' Amended Complaint do not provide sufficient factual basis to support the existence of the elements of a conspiracy, namely, an agreement and some concerted action. Furthermore, Plaintiffs have not pleaded any facts that plausibly suggest a meeting of the minds between Defendants Elizabeth Board of Education, Pablo Munoz (Superintendent) and Karen Murray (Director for Human Resources).  *See generally Twombly*, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement .").  Moreover, Plaintiffs have failed to allege the approximate time when the agreement was made or the period of the conspiracy. *See generally Shearin v. E.F. Hutton Group, Inc*., 885 F.2d 1162, 1166 (3d Cir. 1989) ("To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000).  More specifically, Plaintiffs fail to allege, with any factual support, that each of the foregoing Defendants reached an agreement to carry out the actions alleged in the Amended Complaint (culminating in their decision to withhold her increment and salary adjustment for the 2011-2012 school year), with the mutual objective of retaliating against Mary for her political views (Am. Compl., ¶ 72), statements she made during a February 2008 Board of Education meeting (Am. Compl., ¶ 14) and/or support of her husband's petition for candidacy for the Elizabeth School Board (Am. Compl., ¶ 15).  In fact, Plaintiffs do not even allege that any of the foregoing Defendants were even aware of her political affiliation, the comments she made during the February 2008 Board of Education meeting, and/or her husband's candidacy for the School Board.  Simply put, the Amended Complaint lacks sufficient factual allegations to create "plausible grounds to infer an agreement," as is required by *Twombly*, 550 U.S. at 556.

damage.' Plaintiffs allege that Defendant committed acts in furtherance of the conspiracy in July 2008. However, Plaintiffs filed suit against Defendant on September 1, 2011, well beyond the two year statute of limitations prescribed by Pennsylvania law.'"); *Jones v. Middletown Twp*., 253 Fed. Appx. 184, 187 (3d Cir. 2007) ("The Joneses contend in their brief that their action is primarily one for conspiracy, and thus it is not barred because the statute of limitations does not begin to run until commission of the last overt act, which they believe is the conclusion of the trial on July 18, 2003. We do not agree. The statute of limitations begins to run at the time the claim accrues; time-barred claims cannot be resurrected by being aggregated and labeled 'continuing violations.'"). Counts Two and Seven of the Amended Complaint are hereby dismissed with prejudice.

### C.      Remaining State Law Claims

All remaining claims asserted in Plaintiffs' Amended Complaint are brought pursuant to state law.  Count Three alleges that Defendants' discriminatory employment practices violated N.J.S.A. 18A:1-1 ("Education").  Counts Eight, Nine and Eleven all allege that Defendants' actions have violated various provisions of the Collective Bargaining Agreement governing Mary's employment.[9] Count Ten alleges that Defendants' actions breached the covenant of good

---

[9] Under New Jersey's Employer–Employee Relations Act, N.J.S.A., 34:13A–5.3, "[g]rievance and disciplinary review procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement." N.J.S.A. § 34:13A–5.3; *see generally Saginario v. Attorney General*, 87 N.J. 480, 488 (1981) ("Plaintiff, Saginario, is a state employee whose relationship with the Division of State Police as his employer is not governed by the Labor Management Relations Act."); *Jackson v. Temple Univ. of the Commonwealth Sys. of Higher Educ.,* 721 F.2d 931, 933 (3d Cir. 1983) (finding that district court erred in failing to dismiss public employee's LMRA claims against public employer for lack of subject matter jurisdiction); *see, e.g., Kelly v. Simpson,* 2013 WL 5785293, at *2 (D.N.J. Oct. 28, 2013) ("The allegations in Plaintiff's Amended Complain stem from Plaintiff's employment with the New Jersey Department of Transportation

faith and faith dealing.  Count Fifteen alleges that Defendants' actions constitute intentional infliction of emotional distress.  Count Sixteen asserts a per quod claim brought by Mary's husband, Alfonso.  Count Seventeen contains a claim for punitive damages.

Having dismissed the claims over which this Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims inasmuch as judicial economy dictates that there is no significant interest served by keeping this relatively new matter in federal court. *See* 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pa*., 983 F.2d 1277, 1284–85 (3d Cir. 1993).  As such, the Court hereby remands the remaining state law claims to the state court from which this matter originated for final adjudication.  *See Carnegie– Mellon Univ. v. Cohill,* 484 U.S. 343, 357 (1988) ("The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.").

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are **granted in part**. Counts One, Two, Four, Five, Six, Seven, Twelve, Thirteen and Fourteen of Plaintiffs' Amended Complaint are dismissed *with* prejudice.  The Court declines to exercise supplemental jurisdiction over the remaining claims asserted in the Amended Complaint, all of which are brought pursuant to state law—Counts Three, Eight, Nine, Ten, Eleven, Fifteen, Sixteen and Seventeen.  As such,

---

("NJDOT").  NJDOT, a public employer, is not an 'employer' under the LMRA. Thus, this court lacks subject matter jurisdiction to hear Plaintiff's cause of action brought under 29 U.S.C. § 185.").

Counts Three, Eight, Nine, Ten, Eleven, Fifteen, Sixteen and Seventeen are hereby remanded to the Superior Court of New Jersey, Law Division, Union County.  This matter is hereby **closed**.

An appropriate Order accompanies this Opinion.

DATED:  October 22, 2014

s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE